### JOHN H. MORRIS v. MICHAEL I. FAGAN.

Argued November 19, 1913—Decided March 16, 1914.

1. An officeholder, whose office has been abolished by legislative enactment, is not entitled to the possession of a new office, having the same designation, which has been created by the enactment, the functions, duties and prerogatives of which are radically different, and this is so without regard to the validity or invalidity of the legislation.

2. It is not open to a private relator in a *quo warranto* proceeding to impugn the corporate existence of the governing body which creates a municipal office, in pursuance of statutory authority conferred for that purpose, and fills it. He will not be permitted to do so either by a direct proceeding, or under the guise of an attack upon the legality of the title of the incumbent of the office thus created.

---

On information in the nature of *quo warranto*. On error to the Supreme Court.

For the plaintiff in error, *Warren Dixon*.

For the defendant in error, *John Milton, William D. Edwards* and *Robert H. McCarter*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. On the 15th day of April, 1913, an election was held in the city of Jersey City for the purpose of determining whether the commission form of government provided by chapter 221 of the laws of 1911, commonly known as the "Walsh act," should be substituted in that

city for the governmental system under which its municipal affairs had theretofore been conducted. The election was officially declared to have resulted in the adoption of the "Walsh act;" and a further election was thereupon called for the purpose of selecting the members of the board of commissioners (five in number) provided by that act as the governmental body of the municipality. This second election was held on the 10th of June, 1913; and the five commissioners then chosen thereafter duly organized as a board and took upon themselves the administration of the government of Jersey City.

The second section of the "Walsh act" provides that upon the organizing of the commissioners elected under it the terms of all city officers, whether elective or appointive, shall immediately cease and determine. The fourth section of the act requires the board of commissioners after it is organized to appoint such officers as it may deem necessary for the proper conduct of the affairs of the city, and authorizes it to prescribe their powers and duties. Pursuant to the authority conferred by this latter provision the newly elected board of commissioners appointed the respondent, Michael I. Fagan, as one of the officers of the city, under the title of "city clerk," and he shortly afterwards entered upon the duties of his office.

At the time of the election held for the purpose of determining whether or not the "Walsh act" should be adopted by Jersey City the relator, John H. Morris, was the incumbent of the office of city clerk of that municipality; an office created by, and the powers and duties of which were specified in the city charter. He seeks by the information filed in the present case to oust the respondent from the office to which he was appointed by the board of commissioners, and to have himself adjudged to be legally entitled to hold that office.

The judgment of the Supreme Court was in favor of the respondent.

The single ground upon which the relator bases his contention that he, and not the respondent, is entitled to the office which the latter holds is that the "Walsh act," although

officially declared to have been adopted by the voters of
Jersey City at the election held on April 15th, 1913, did not
in fact receive a sufficient number of votes in favor of its
adoption at that election to make it operative in that munic-
ipality. The referendum provision of the "Walsh act" de-
clares that when an election shall be held in any municipality
for the purpose of determining whether or not the act shall
become and be operative in that municipality, the votes cast
in favor of its adoption must be equal to at least thirty per
cent. of the votes cast for members of the general assembly
at the last preceding general election in order to render it
operative therein; and the specific contention of the relator
is that at the special election the number of votes cast in
favor of the adoption of the act did not equal thirty per cent.
of the votes cast for members of the general assembly at the
then last preceding general election.

Assuming the fact to be as the relator contends, and that
it is one of which the court, in a proceeding like the present
will take cognizance, we fail to perceive that it has any
bearing upon his claim to the office held by the respondent.
That office, although the incumbent thereof is designated the
city clerk, is an entirely different one from that which was
held by the relator, under a similar designation, prior to the
organization of the board of commissioners. As has already
been pointed out the relator's office was one the duties, powers
and privileges of which were specifically provided by the
Jersey City charter, while that now held by the respondent
carries with it only those powers, privileges, obligations and
duties which the board of commissioners see fit from time to
time to impose upon the incumbent. Manifestly, therefore,
the fact that the "Walsh act" failed of adoption at the special
election could not operate to entitle the relator to an office to
which he never had been appointed and which depended for
its existence upon the adoption, by the voters of Jersey City,
of the act which created it.

We might well leave the case without further discussion
except for the fact that we might be considered to hold the
view that it is open to a private relator in a *quo warranto*

proceeding to attack the corporate existence of the governing body which creates a municipal office in pursuance of statutory authority conferred for that purpose, and fills it. We hold no such view. The board of commissioners chosen at the election held after the officially declared adoption of the "Walsh act" are, if not the *de jure,* certainly the *de facto,* governing body of Jersey City. There is no other government existing in that municipality except that carried on by the gentlemen who compose that board, and the attorney-general alone, acting as the representative of the state, can call into question the legality of its existence. A private relator will not be permitted to do so, either by a direct proceeding, or · in the guise of an attack upon the legality of the title of an incumbent of a municipal office. *Mitchell* v. *Tolan.* 4 *Vroom* 201; *Bownes* v. *Meehan,* 16 *Id.* 192; *Dugan* v. *Farrier,* 18 *Id.* 387; *Steelman* v. *Vickers,* 22 *Id.* 180. If one municipal officer can be ousted from his office by a private relator on the ground that the corporation has no life, so can all the other functionaries of the municipality, and thus the local government, for all useful purposes, be brought to an end. Public policy will not permit the dismemberment of a municipality, and its consequent practical dissolution, at the instance of a private person. So long as the state itself does not see fit to interfere and terminate its existence by direct proceedings brought by its attorney-general, a *de facto* municipal government may exercise upon the citizen, through officers appointed by it, all the powers conferred by the legislature upon the municipality as fully and completely as if the legality of its existence was beyond question. *Lang* v. *Bayonne,* 45 *Vroom* 462

The judgment under review will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ. 11.

*For reversal* — None.